UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

vs.

RAYMOND COLLAZO,

Defendant.

DECISION AND ORDER
6:15-CR-6014-CJS-1

Now before the Court is an application (ECF No. 55) by Raymond Collazo ("Defendant") for "compassionate release" pursuant to 18 U.S.C. § 3582(c)(1)(A)." The application is denied.

BACKGROUND

Following an investigation by the Rochester Police Department ("RPD") utilizing wiretaps and controlled purchases of narcotics, investigators determined that Defendant was part of an illegal narcotics distribution operation that included himself and at least six other individuals.[1] On April 24, 2014, RPD officers arrested Defendant at 617 Ridgeway Avenue in the City of Rochester. A search of the location, which was occupied only by Defendant and his girlfriend, revealed quantities of heroin (200 grams) and cocaine (12.5 grams), a cutting agent used to dilute heroin and cocaine, multiple digital scales, baggies and other paraphernalia for packaging narcotics for sale, cash, three loaded handguns (one of which had been reported stolen in 2011) and additional magazines loaded with

[1] Presentence Investigation Report ("PSR") at p. 9, ¶ 40.

ammunition.[2]

On January 21, 2016, Defendant pled guilty, pursuant to a Plea Agreement (ECF No. 35), to Counts 1 and 3 of a three-count Indictment (ECF No. 13) that had been returned against him on February 5, 2015. Count 1 of the Indictment charged Defendant with knowingly, intentionally and unlawfully possessing with intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § § 841(a)(1) & 841(b)(1)(B), and 18 U.S.C. § 2. Count 3 of the Indictment charged Defendant with knowingly and unlawfully possessing three firearms in furtherance of drug trafficking crimes committed in violation of 21 U.S.C. § 841(a)(1) as set forth in Counts 1 and 2 of the Indictment, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

On December 20, 2016, the Court sentenced Defendant to a term of imprisonment of 70 months on Count 1 and a consecutive term of 60 months on Count 3, for a total term of imprisonment of 130 months, to be followed by a four-year term of supervised release. Defendant has no other arrests or convictions.[3]

Defendant is presently serving his sentence at Allenwood Low Federal Correctional Institution ("Allenwood Low"). Defendant's current scheduled release date is December 10, 2023, according to U.S. Probation and Pretrial Services ("Probation"). Consequently, Defendant has approximately 3.5 years remaining on his prison sentence. Defendant is presently 35 years of age.[4] At the time of sentencing, Defendant reported

[2] PSR at pp. 7–8.
[3] PSR at p. 12.
[4] PSR at p. 14.

that he was in good physical health, with no history of significant illness or injury.[5]

On June 2, 2020, Defendant filed the subject application (ECF No. 55) for compassionate release, proceeding *pro se*. Accordingly, the Court construes the application liberally to raise the strongest arguments that it suggests. The application consists of a two-page handwritten and photocopied "form" letter, onto which Defendant has added certain information, along with two pages of exhibits specific to Defendant. The application requests a sentence of time served or release to home confinement. The application asserts that Defendant has exhausted his administrative remedies, and that cases of Covid-19 have been detected at other BOP facilities near Allenwood Low. The application includes a cursory request for appointment of counsel.

Exhibit 1 to the application appears to be a BOP printout entitled "Male Custody Classification Form," dated December 19, 2018, relating to Defendant. Presumably, Defendant submitted the form because it indicates that he has no prior criminal history and no history of violence. Although, the form also rates Defendant as "poor" in the categories of "living skills" and "program participation." Exhibit 2 appears to be a decision, dated May 7 2020, by the warden at Allenwood Low denying a request by Defendant to be released to home confinement under the CARES Act, 18 U.S.C. § 3624(c)(2). The warden indicated that he was denying Defendant's request "due to your disciplinary conduct within the past 12 months and violence."

On June 17, 2020, the Government filed a four-page letter response (ECF No. 57) opposing the application. The Government indicates that Defendant's request for

[5] PSR at p. 15.

compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) should be denied because Defendant did not exhaust his administrative remedies before filing the application, and because Defendant has not shown that he is entitled to relief. With regard to exhaustion, the Government indicates that Defendant has shown only that he made a prior request for home confinement, which does not satisfy the statutory exhaustion requirements for compassionate release.[6] As for the merits of the application, the Government indicates that Defendant has not shown extraordinary and compelling reasons why he should be released. On this point, the Government states that "Collazo's sole basis upon which he seeks release from his 130-month sentence is his generalized concern contracting COVID-19 based on the conditions at FCI Allenwood[, y]et he sets forth no particular medical or health condition that makes him at risk."[7] The Government further maintains that the "§ 3553(a) factors" weight against Defendant's request, since he was an "armed heroin and cocaine trafficker" involved in an "extensive drug organization."[8]

In response to an inquiry by the Court, Probation reports that Defendant is presently classified by the Bureau of Prisons ("BOP") as care level 1 for both physical and mental health, and that his BOP file indicates he is classified as "healthy/mild health condition." Probation further indicates that as of June 17, 2020, Allenwood Low had no

[6] *See*, Govt's Response (ECF No. 57) at p. 2 ("In this case, Collazo attaches a copy of the Warden's denial of a prior request for home confinement. Dkt. 55 at 4. However, a prior request for home confinement, a matter strictly within the purview of the BOP, does not satisfy Collazo's burden of establishing he has made the appropriate request for compassionate release. Collazo makes no mention of having made any prior compassionate release request, nor does he provide any documentation of any such request. In short, Collazo has set forth absolutely no basis to believe that BOP has had an opportunity to consider a request for release in the first instance.").

[7] ECF No. 57 at p. 3.

[8] ECF No 57 at p. 3.

confirmed or suspected cases of inmates or staff with Covid-19.

ANALYSIS

Preliminarily, the Court denies Defendant's boilerplate request for appointment of counsel, since, as discussed below, his application for compassionate release is both procedurally barred and lacking in merit.

Turning to the request for compassionate release, 18 U.S.C. § 3582(c)(1)(A) gives a trial court discretion to modify a term of imprisonment or supervised release only

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . .

§ 3582(c)(1)(A). An inmate's failure to exhaust administrative remedies for a compassionate release request is a "glaring roadblock foreclosing compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Additionally, a defendant who has exhausted administrative remedies and seeks relief pursuant to § 3582(c)(1)(A)(i), must clear three further hurdles. *See, e.g., United States v. Ebbers*, (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020). First, the Court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and find that a sentence reduction is warranted. *See* § 3582(c)(1)(A). In addition, the defendant must demonstrate that extraordinary and compelling reasons exist for a sentence reduction, and that such a reduction is consistent with applicable policy statements of the Sentencing Commission. *See, e.g., United States v. Korn*, 15-CR-81S and 11-CR-384S, 2020 WL 1808213, at *2 (W.D.N.Y. Apr. 9, 2020).

Failure to Exhaust Administrative Remedies

As noted above, 18 U.S.C. § 3582(c)(1)(A) provides that a defendant may bring a motion for compassionate release upon the earlier of his full exhaustion of "all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility."

"[R]egardless of whether [§ 3582(c)(1)(A)] is a jurisdictional or a claim-processing rule, its exhaustion requirements are clearly mandatory." *United States v. Ogarro*, No. 18-CR-373-9 (RJS), 2020 WL 1876300 at *3 (S.D.N.Y. Apr. 14, 2020). The Supreme Court has stated that claim-processing rules created by express statutory directive are mandatory, while only judge-made rules are "amendable to judge-made exceptions." *Ross v. Blake*, 136 S. Ct. 1850, 1856–57 (2016). *See also, Theodoropoulos v. I.N.S.*, 358 F.3d 162, 172 (2d Cir. 2004) (stating, "as a general rule, courts are required to strictly enforce statutory exhaustion requirements."). Congress has drafted § 3582(c)(1)(A) such that its "exhaustion proscription is clear as day." *Ogarro*, 2020 WL 1876300 at *3 (citations omitted).

Here, Defendant claims that he exhausted his administrative remedies by applying for home confinement under the CARES Act, 18 U.S.C. § 3624(c)(2). However, the fact that Defendant made such an application, which was denied by the warden at Allenwood Low, is insufficient to satisfy the exhaustion requirement for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Consequently, the application is denied for failure to exhaust administrative remedies.

On July 1, 2020, after the Court already had this Decision and Order prepared to issue, Defendant filed an application (ECF No. 58) to stay his application to allow him to exhaust his administrative remedies. That is, Defendant now recognizes that he did not comply with the exhaustion requirements for compassionate release. However, that application is denied, since as discussed below, even if Defendant had exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A), the application also fails on its merits.

To the extent that Defendant may be asking the Court to grant him home confinement under 18 U.S.C. § 3624(c)(2), the application must be denied since the discretion to grant or deny such applications belongs to BOP. *See, United States v. Bido*, No. 14-CR-212 (RJS), 2020 WL 2765689, at *1 (S.D.N.Y. May 28, 2020) ("The CARES Act and the Attorney General have given the BOP the authority to permit prisoners to finish the remainder of their sentence in home confinement. *See* 18 U.S.C. § 3624(c)(2). [However, the remedy of] home confinement [is] exclusively within the discretion of the BOP; the Court lacks authority to order [it].").

Failure on the Merits

In evaluating the merits of Defendant's application, the Court must consider whether a reduced sentence would be sufficient (but not greater than necessary) to comply with the sentencing factors set forth in 18 U.S.C. § 3553(a), and the defendant must show that extraordinary and compelling reasons exist for a sentence reduction, and that such a reduction is consistent with applicable policy statements of the Sentencing Commission. *See United States v. Chester*, 17-CR-06151 EAW, 2020 WL 2771077, at

*3 (W.D.N.Y. May 29, 2020).

Under 28 U.S.C. 994(t), Congress delegated to the United States Sentencing Commission the duty of “promulgating general policy statements regarding the sentencing modification provisions in [18 U.S.C. § 3582(c)(1)(A)], [and] describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.” In so doing, the Sentencing Commission promulgated the following four examples as “extraordinary and compelling reasons” warranting the reduction of a term of imprisonment under § 3582(c)(1)(A):

> (A) Medical Condition of the Defendant.
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory) . . . . Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant. The defendant (i) is at least 65 years old . . .
>
> (C) Family Circumstances.
>
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

>   (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
>   (D) Other Reasons.  As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 (Application Notes).

Here, Defendant indicates that he is worried about the possibility of contracting Covid-19 at Allenwood Low, but he does not allege that he has any serious underlying health problem or that conditions at Allenwood are particularly dangerous.  The record indicates that Defendant is 35 years of age and in good health.  Probation indicates that as of June 17, 2020, Allenwood Low had no confirmed or suspected cases of inmates or staff with Covid-19.  Moreover, another Judge of this Court recently observed that, "unlike other larger BOP facilities, FCI Allenwood Low does not appear to have a significant COVID-19 problem." *United States v. Vongxay*, No. 19-CR-6099L, 2020 WL 3240778, at *1 (W.D.N.Y. June 15, 2020).  Defendant has offered no evidence to the contrary.  In sum, Defendant has not identified any "extraordinary and compelling reasons" why the Court should grant his application.  Nor does the Court find that a sentence reduction is warranted under 18 U.S.C. § 3553(a).

CONCLUSION

For the foregoing reasons, Defendant's motions for compassionate release (ECF No. 55) and for a stay (ECF No. 58) are denied.

IT IS SO ORDERED.

DATED: July 7, 2020
Rochester, New York

Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge